FILED
2021 AUG 25 AM 9:59
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AVTECH CAPITAL, LLC,<br><br>　　Plaintiff,<br><br>v.<br><br>C & G ENGINES CORP.; GABRIEL ANGULO; CG MIAMI NDT, LLC; and JESUS ROJAS;<br><br>　　Defendants. | MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND MOTION FOR DEFAULT JUDGMENT<br><br>Case No. 2:19-cv-00541-JNP-DAO<br><br>District Judge Jill N. Parrish |

Plaintiff Avtech Capital, LLC filed a motion seeking two distinct forms of relief. ECF No. 67. First, Avtech moves for summary judgment against defendant Gabriel Angulo. Second, Avtech moves for the entry of a default judgment against defendants C & G Engines Corp., CG Miami NDT, LLC, and Jesus Rojas. The court GRANTS the motion for summary judgment and default judgment.

## BACKGROUND

Tetra Financial Group, LLC leased an airplane engine to C & G Engines Corp. in November 2015. In August 2018, Tetra Financial changed its name to Avtech Capital, LLC. Avtech has produced copies of guaranties signed by defendants Gabriel Angulo, Jesus Rojas, and CG Miami NDT, LLC. These guaranties provided that Angulo, Rojas, and CG Miami would be liable for C & G's obligations under the lease agreement if C & G defaulted.

The lease term was 48 months. C & G made the first 40 monthly payments. But C & G failed to make the June 1, 2019 lease payment and all scheduled payments thereafter. Angulo, Rojas, and CG Miami did not make any payments on behalf of C & G.

The lease agreement with C & G contains a liquidated damages provision. It provides that after the 40th payment, the "Stipulated Loss Value" for a breach of the contract would be $568,864. The agreement also contained a provision stating: "For any payment not received when due, [C & G] shall pay a reasonable late charge of five percent (5%) of the amount due . . . ." Finally, the agreement provided that amounts due under the Stipulated Loss Value would accrue interest from the date of default at an interest rate of 18% per annum.

On July 30, 2019, Avtech filed a lawsuit against C & G, Angulo, Rojas, and CG Miami, asserting claims for breach of contract and breach of the covenant of good faith and fair dealing against each of them. Angulo answered the complaint. But C & G, Rojas, and CG Miami failed to file an answer. The clerk of court entered default certificates for each of these defendants.

Avtech subsequently filed a motion requesting two forms of relief. First it argued that it is entitled to summary judgment in its favor on its claims against Angulo. Second, it argues that it is entitled to a default judgment against C & G, Rojas, and CG Miami.

## ANALYSIS

### I.  MOTION FOR SUMMARY JUDGMENT AGAINST ANGULO

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there

is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted).

Plaintiff Avtech argues that it is entitled to summary judgment in its favor against Angulo because it is undisputed that C & G breached the lease agreement, and that Angulo did not comply with his obligation under the guaranty to pay the amounts owed by C & G. Avtech further asserts that the liquidated damages provision of the lease agreement eliminates the need for a trial on damages. Angulo argues that summary judgment is not appropriate for three main reasons: (1) Avtech lacks standing to enforce the personal guaranty, (2) Avtech has not produced admissible evidence of the terms of the guaranty, and (3) Avtech has not established that it is entitled to summary judgment on the claim for breach of the covenant of good faith and fair dealing. The court addresses each of these arguments and then turns to the issue of damages.

A. *Standing*

Angulo first argues that Avtech does not have standing to sue for breach of the personal guaranty because his contract was with Tetra Financial. The court disagrees. Avtech presented undisputed evidence that Tetra Financial Group, LLC changed its name to Avtech Capital, LLC in August 2018.[1] Thus, Avtech is the same entity that entered into both the lease agreement with

---

[1] At oral argument, Angulo argued for the first time that the court should not consider the document changing Tetra Financial's name to Avtech, which was filed with Utah Department of Commerce, because it was attached to Avtech's reply brief and because Avtech did not include the document in its disclosures. The court need not consider Angulo's argument for a number of reasons. First, "the court need not consider arguments raised for the first time at oral argument." *Rufus v. Pacificorp*, No. 2:19-cv-00377-DAO, 2021 WL 2227098, at *8 (D. Utah June 2, 2021). Second, Avtech attached to his opening brief the declaration of its CEO stating that Avtech's former name was Tetra Financial. Because Angulo failed to produce any evidence to dispute the assertion in the declaration regarding the name change, the court may treat this fact as undisputed. *See* FED. R. CIV. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact . . . , the court may . . . consider the fact undisputed for purposes of the motion . . . ."). Third, because the

3

C & G and the personal guaranty agreement with Angulo—only the name has changed. "The change of a corporation's name is not a change of the identity of a corporation and has no effect on the corporation's property, rights, or liabilities." *Alley v. Miramon*, 614 F.2d 1372, 1384 (5th Cir. 1980). The same holds true for a limited liability company. Accordingly, Avtech can enforce contracts entered into under its former name.

    B.    *Authenticity of the Personal Guaranty*

Avtech attached a copy of Angulo's personal guaranty to its motion for summary judgment. Angulo argues that the copy is not admissible evidence under Rules 1002 and 1003 of Federal Rules of Evidence. Rule 1002 provides: "An original writing . . . is required in order to prove its content unless these rules or a federal statute provides otherwise." Rule 1003 establishes a significant exception to the original writing requirement: "A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Angulo asserts that the copy of the personal guaranty is not admissible because there is a genuine issue as to the authenticity of the original. He supports this argument with an affidavit, in which he avers: "I remember signing some documents, but do not recall which documents I signed related to the claims in this pending lawsuit filed by Plaintiff. I have no specific recollection of signing any personal guaranty alleged in this case."

---

document changing the name of Tetra Financial to Avtech is a public document in the files of the Utah Department of Commerce, the court may take judicial notice of the name change. See *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) (courts may take judicial notice of "facts which are a matter of public record").

The court concludes that Angulo has not raised a genuine question of authenticity. A declaration that a party did not remember signing a document is not sufficient to call into question a document's authenticity. *Comolli v. Huntington Learning Centers, Inc.*, 180 F. Supp. 3d 284, 290 (S.D.N.Y. 2016), *aff'd*, 683 F. App'x 27 (2d Cir. 2017) ("[The plaintiff's] purported doubt about the authenticity of her release—which is based on her claims that she did not recall signing it or seeing one of the producers on the set, and that she would never sign a release of rights in perpetuity—is far too thin a reed to support such a claim."); *Feeley v. SunTrust Bank*, No. CIV.A. 12-4522, 2013 WL 638881, at *4 (E.D. Pa. Feb. 20, 2013) (same). Moreover, in Angulo's answer to the amended complaint, he conceded that he "believes he did sign a personal guarantee, but does not have a copy of it." Angulo's admitted belief that he signed the personal guaranty substantially undercuts his declaration that he does not have a specific recollection of signing the document. Because Angulo has not raised a genuine issue as to the authenticity of the personal guaranty, the copy of the document provided by Avtech is admissible under Rule 1003.[2]

---

[2] At oral argument, Angulo argued for the first time that disputes of material fact prevented the court from concluding that he signed the personal guaranty. The court rejects this argument because Angulo raised it for the first time at the hearing on the motion for summary judgment. See *Rufus*, 2021 WL 2227098, at *8. Even if the court were to address this argument, Angulo has not cited evidence that would create a dispute of material fact precluding summary judgment. Angulo argued that because the court found by a preponderance of the evidence that his former codefendant, Jose Perez, did not sign his personal guaranty, the court should conclude that there is a dispute as to whether Angulo's signature is authentic. But the issue of whether Perez's signature is authentic is separate from the issue of whether Angulo's signature is authentic. Perez presented evidence of known samples of his signature that looked nothing like the signature on the guaranty, the testimony of a handwriting expert, and his own sworn testimony that he was out of the country and did not sign the guaranty. Angulo, on the other hand, has not cited any similar evidence that would create a genuine dispute of fact as to whether the signature on his personal guaranty is genuine. As noted above, his declaration that he does not remember whether or not he signed the guaranty does not create a dispute of fact. The court also notes that there was no evidence presented in the Perez evidentiary hearing that Avtech forged his signature. Instead, the evidence showed

In short, the court rejects Angulo's arguments against summary judgment on the breach of contract claim. Moreover, the court concludes that the undisputed evidence demonstrates the existence of a binding contract between Avtech and Angulo and a breach of that contract when Angulo did not pay the amounts owed by C & G under the lease agreement. Accordingly, Avtech is entitled to summary judgment on its breach of contract claim.

C.    *Covenant of Good Faith and Fair Dealing*

"Under the covenant of good faith and fair dealing, both parties to a contract impliedly promise not to intentionally do anything to injure the other party's right to receive the benefits of the contract." *Oman v. Davis Sch. Dist.*, 194 P.3d 956, 968 (Utah 2008) (citation omitted). The "core function" of the covenant of good faith and fair dealing is to prevent "another's opportunistic interference with the contract's fulfillment." *Young Living Essential Oils, LC v. Marin*, 266 P.3d 814, 817 (Utah 2011). This core function "protects commercial reliance interests" by implying terms "that the parties surely would have agreed to if they had foreseen and addressed the circumstance giving rise to their dispute." *Id.* at 816–17. But the covenant of good faith and fair dealing should serve a limited role because judicial misuse of this legal principle "threatens 'commercial certainty and breed[s] costly litigation.'" *Id.* at 816 (alteration in original) (citation omitted).

Avtech argues that it is entitled to summary judgment on its claim for breach of the implied covenant of good faith and fair dealing. It asserts that it had a right receive the benefits of the personal guaranty—Angulo's payment of the full amount owed by C & G after it breached the

---

that the forgery took place in Miami and that the document was latter sent to Avtech, which unwittingly accepted the signature as genuine.

lease agreement—and that it did not receive that benefit. From this premise, Avtech argues that it has established its right to prevail on its good faith and fair dealing claim as a matter of law.

Angulo argues that the court should not grant summary judgment on the covenant of good faith and fair dealing claim because it is duplicative of the breach of contract claim. The court agrees with Angulo. "[T]he covenant of good faith and fair dealing is not an alternative method for enforcing the written provisions of a contract." *First Guar. Bank v. Republic Bank, Inc.*, No. 1:16-cv-00150-JNP-CMR, 2019 WL 4736916, at *11 (D. Utah Sept. 27, 2019). Instead, this legal principle implies terms not found in the contract but that the parties would have agreed to if they had thought to do so. *Young Living*, 266 P.3d at 817. Here, Avtech does not identify any implied terms that it seeks to enforce. Instead, it pursues the enforcement of the actual terms of the personal guaranty. Thus, Avtech has not even articulated a valid theory of a breach of the implied covenant of good faith and fair dealing, much less shown that it is entitled to summary judgment on this claim.

But Avtech clarified in its reply brief that does not seek any damages for its breach of the covenant of good faith and fair dealing claim in excess of the amount it is entitled to under its breach of contract claim. Because Avtech has shown that it prevails as a matter of law on its breach of contract claim, its breach of the covenant of good faith and fair dealing claim is moot.

D. *Damages*

Avtech originally sought three forms of damages for breach of contract: (1) liquidated damages in the amount of $568,864, (2) late charges for missed payments in the amount of $1,150.88 per month until entry of judgment, and (3) interest at the rate of 18% per annum. But at oral argument, Avtech acknowledged that its damages claims may overlap and stated that it would drop its claim for late charges.

Accordingly, C & G is liable for liquidated damages in the amount of $568,864. C & G must pay 18% annual interest on this amount from the date of breach (June 1, 2019) until paid.[3] The interest amounts to $280.53 per day. Angulo, under the terms of the personal guaranty, is liable for these amounts as well.

## II.     MOTION FOR DEFAULT JUDGMENT

The clerk of court entered default certificates for C & G, Rojas, and CG Miami. The facts alleged in the complaint establish that C & G is liable for breach of the lease agreement and Rojas and CG Miami are liable for breach of the guaranties they signed to the same extent that Angulo is liable for the breach of his personal guaranty. As stated above, Avtech has shown that its damages for breach total $568,864 plus 18% annual interest on this amount. The court shall enter judgment against C & G, Rojas, and CG Miami, jointly and severally with Angulo, in this amount.

## CONCLUSION

Avtech is entitled to summary judgment on its breach of contract claim against Angulo. It is also entitled to a default judgment against C & G, CG Miami, and Rojas. Accordingly, the court GRANTS Avtech's combined motion for summary judgment and for default judgment. ECF No. 67. The court shall enter a judgment against Angulo, C & G, Rojas, and CG Miami, jointly and severally, in the amount of $568,864 plus 18% annual interest on the principal amount due until paid in full.

---

[3] Because the interest provision of the lease agreement specifically provides that the 18% interest rate applies after entry of judgment, this rate applies post-judgment as well. *See Mid Atl. Cap. Corp. v. Bien*, 956 F.3d 1182, 1208 (10th Cir. 2020). But the interest provision does not provide for compound interest. Accordingly, interest shall accrue only on the principal amount due.

DATED August 25, 2021.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge